**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    **Plaintiff,**<br><br>              **v.**<br><br>RAMÓN MARTÍNEZ-FELIPE [1], *et al.*,<br><br>    **Defendants.** | Criminal **No.** 20-359 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

     Before the Court are defendants Ramón Martínez-Felipe ("Martínez"), Willi García-Jiménez ("García-Jiménez"), and Augustin García-Encarnación ("García-Encarnación") (collectively, "defendants")'s motions to dismiss the indictment. (Docket Nos. 81 and 97.)  For the reasons set forth below, the defendants' motions to dismiss are **DENIED**.

**I.   Background**

     This action concerns an alleged attempt to import cocaine into the United States.  Drug Enforcement Administration Special Agent Matthew Wunschel ("Wunschel") prepared an affidavit in support of the criminal complaint.  (Docket No. 4, Ex. 1.)  The following allegations derive from Special Agent Wunschel's affidavit.

In October 2020,[1] a United States Coast Guard ("USCG") Maritime Patrol Aircraft detected a go-fast vessel approximately 34 nautical miles northeast of Punta Cana, Dominican Republic. Id. at p. 2. This vessel displayed no indicia of nationality. Id. An orange tarp on the bow suggested that the vessel contained controlled substances, an attempt to conceal illicit cargo. Id. at p. 3.

The occupants of the vessel jettisoned several bales into the ocean. Id. An individual bale typically consists of "twenty (20) to twenty-five (25) kilograms of cocaine." Id. The abandoned bales "appeared to be weighted and sank immediately." Id.

USCG Cutter WINSLOW GRIESSER interdicted the go-fast vessel, identifying the three occupants as Martínez, García-Jiménez, and García-Encarnación. Id. "None of them claimed to be the vessel master." Id. The defendants claimed Dominican Republic nationality for themselves. Id. Martínez claimed Dominican Republic nationality for the vessel.[2] The Dominican Republic could not, however, confirm or deny the vessel's registration. Id.

---

[1] Special Agent Wunschel's affidavit contains a typographical error, omitting the specific date of interdiction. The indictment alleges that the defendants engaged in criminal activity on October 10, 2020. (Docket No. 19.)

[2] Special Agent Wunschel's affidavit does not specify whether the defendants claimed Dominican Republic nationality for the vessel. The Statement of Officer Groen Concerning the Interdiction and Seizure of [Unidentified] Yola (TWON) on October 10, 2020, provides that "Ramón Martínez said the vessel was Dominican." (Docket No. 84, Ex. 1. At p. 15.)

Samples collected from the go-fast vessel and the defendants'
bodies tested positive for the presence of cocaine.   Id.
Subsequently, the USCG detained the defendants and transferred
them to the San Juan Field Division of the Drug Enforcement
Administration.   Id. at p. 4.   Martínez, García-Jiménez, and
García-Encarnación appeared before Magistrate Judge Marcos E.
López on October 19, 2020 for their preliminary hearings. (Docket
No. 7.)

On October 28, 2020, a grand jury returned an indictment
charging the defendants with conspiracy to possess with intent to
distribute a controlled substance aboard a vessel subject to the
jurisdiction of the United States, in violation of 46 U.S.C. §§
70503(a)(1) and 70506(b) (count one), and possession with intent
to distribute a controlled substance aboard a vessel subject to
the jurisdiction of the United States, in violation of 46 U.S.C.
§ 70503(a)(1) and 18 U.S.C. § 2 (count two).   (Docket No. 19.)

After negotiating with the United States, the defendants pled
guilty to count one of the indictment.   (Docket No. 71.)[3]   The
First Circuit Court of Appeals then issued United States v. Dávila-
Reyes, 23 F.4th 153 (1st Cir. 2022) (reh'g en banc granted, opinion
withdrawn, 38 F. 4th 288 (1st Cir. 2022), invalidating federal law

---

[3] The defendants entered into plea agreements with the United States on December
27, 2022.  (Docket Nos. 65, 67, and 70.)

and altering the legal landscape within this jurisdiction.  The defendants moved to dismiss the indictment, contending that Dávila-Reyes nullified the jurisdictional basis of this prosecution.  (Docket No. 81.)[4]  The United States moved for an *en banc* hearing before the First Circuit Court of Appeals.  (Docket No. 86 at p. 2.)  This Court issued a stay order, holding this proceeding in abeyance pending "resolution of the government's *en banc* petition."  (Docket No. 89.)

In the interim, the United States filed the Department of State Additional Certification for the Maritime Drug Law Enforcement Act Case Involving Unknown Go-Fast Vessel (TWON). (Docket No. 95, Ex. 1.)[5]  According to this certification, the "Government of the Dominican Republic replied that the claimed registry and nationality of the vessel is **denied**."  Id. at p. 3 (emphasis added).  The defendants filed a supplemental motion to dismiss on August 26, 2022.  (Docket No. 97.)[6]  The United States responded. (Docket No. 107.)

---

[4] García filed the motion to dismiss on March 24, 2022.  (Docket No. 81.) Subsequently, the Court granted García-Jiménez and García-Encarnación's motions to join.  (Docket Nos. 87.)

[5] This certification does not set forth the Federal Drug Identification Number. (Docket No. 95, Ex. 1.)

[6] This Opinion and Order adjudicates the original and supplemental motions to dismiss.  (Docket Nos. 81 and 89.)  The Court refers to both motions as a single pleading.

## II.  Federal Rule of Criminal Procedure 12

Pursuant to Federal Rule of Criminal Procedure 12(b)(2), a "motion that the court lacks jurisdiction may be made at any time while the case is pending."  Fed. R. Crim. P. 12(b)(2).  On a motion to dismiss, the allegations contained in the indictment are accepted as true.  See United States v. Bohai Trading Co., Inc., 45 F.3d 577, 578 n.1 (1st Cir. 1995).

The federal judicial authority extends "to all Cases, in Law and Equity, arising under the Constitution, the Laws of the United States, and Treaties made."  U.S. Const. art. III, § 2.  This Court possesses subject matter jurisdiction in a criminal action when the indictment charges "that the defendant committed a crime described in Title 18 or in one of the other statutes defining federal crimes."  United States v. González, 311 F.3d 440, 442 (1st Cir. 2002); see 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of courts of the States, of all offenses against the laws of the United States.").  The defendants' motion to dismiss pertains to the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70502(c)(1), et seq.

### A.  The Maritime Drug Law Enforcement Act

Congress enacted the Maritime Drug Law Enforcement Act in 1986 to diminish the operations of international drug

trafficking organizations.  These evasive entities "constantly refine their methods for transporting illegal narcotics from country to country."  United States v. Carvajal, 924 F. Supp. 2d 219, 224 (D.D.C. 2013); see Lt. CDR Aaron J. Casavant, In Defense of the U.S. Maritime Drug Enforcement Act:  A Justification for the Law's Extraterritorial Reach, 8 HARV. NAT'L SEC. J. 191, 199-200 (2017) (noting that Congress endeavored to "counter the traffickers' 'mothership' strategy, target[ting] the larger vessels sailing just outside U.S. territorial seas that were sending smaller, faster vessels to bring contraband ashore."). Consequently, the MDLEA is an expansive statute.  It provides in pertinent part that:

> an individual [on board a vessel subject to the jurisdiction of the United States] may not knowingly or intentionally . . . manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance.

46 U.S.C. § 70503(a)(1).  "[J]urisdictional issues arising under the [MDLEA] are preliminary questions of law to be determined solely by the trial judge," and do not constitute an element of the offense.  46 U.S.C. § 70504; see United States v. Gil-Martínez, 980 F. Supp. 2d 165, 168 (D.P.R. 2013) (Besosa, J.).  Vessels without nationality are subject to the MDLEA.  Stateless vessels include, but are not limited to:

(A)    **a vessel abroad which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed** (hereinafter, "subsection (A)");

(B)    a vessel abroad which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel;

(C)    **a vessel abroad which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality** (hereinafter, "subsection (C)")

46 U.S.C. §§ 70502(d)(1)(A)-(C) (emphasis added).  A vessel may be deemed stateless "even if [it] does not fall within one of the specifically enumerated categories."  United States v. Matos-Luchi, 627 F.3d 1, 15 (1st Cir. 2010).  To facilitate expeditious consent and waiver, the MDLEA provides that the flag state may provide registry information "by radio, telephone, or similar oral or electronic means."  46 U.S.C. § 70502(d)(2).[7]

## III. Discussion

Martínez, García-Jiménez, and García-Encarnación set forth six arguments in support of their motion to dismiss.  (Docket Nos. 81 and 97.)  First, they maintain that they "made a verbal claim of Dominican nationality, not Dominican registry."  (Docket No. 97

---

[7] Every vessel is required to "sail under the flag of one State only and, save in exceptional cases. . . shall be subject to its exclusive jurisdiction on the high seas." Convention on the High Seas, art. 6, Apr. 29, 1958, 13 U.S.T. 2312, 450 U.N.T.S. 82.

at pp. 14-20.)  Second, this prosecution is purportedly precluded by Dávila-Reyes, 23 F.4th 153 (1st Cir. 2022).  (Docket No. 81.) Third, the defendants posit that the MDLEA is unconstitutionally vague.  (Docket No. 97 at p. 8.)  Fourth, the defendants argue that the omission of a nexus requirement offends the Due Process Clause.  Id. at p. 9.  Fifth, they claim that the USCG apprehended their go-fast vessel in the Dominican Republic.  Id. at p. 21. Sixth, Martínez, García-Jiménez, and García-Encarnación maintain that "the government waived any alternate jurisdictional bases [sic]."  Id. at p. 4.

### A.  Registry and Nationality

The defendants differentiate registry from nationality, asserting that this distinction is fatal to the indictment. Because the defendants "made a verbal claim of Dominican nationality," they argue, "§ 70502(d)(1)(C) is inapplicable since subsection (C) by its plain terms refers only to claims of registry."  (Docket No. 97 at p. 14.)  This proposition is, however, based on a false premise.

Initially, the Dominican Republic could "neither confirm nor deny the vessel's registry," placing this case within the purview of subsection (C).  (Docket No. 4, Ex. 1 at p. 3.)  The Dominican Republic subsequently clarified, however, that the defendants' **"claimed registry and nationality of vessel is**

**denied**.” (Docket No. 95, Ex. 1 at p. 3) (emphasis added). Consequently, subsection (A) is applicable. See United States v. Romero, 32 F.3d 641, 648 (1st Cir. 1994) (“To satisfy the jurisdictional requirement under [the predecessor to subsection (A)], the government presented a ‘certification of denial’ from the State Department as proof that the defendants’ claim of registry was denied by Colombia.”); United States v. Rosero, 42 F.3d 166, 174 (3d Cir. 1994) (“[The] prosecution can establish that a vessel is stateless by showing that the master or person in charge made a claim of nationality that was denied by the flag nation whose registry was claimed.”); United States v. Mosquera, 192 F. Supp. 2d 1334, 1349 (M.D. Fla. 2022) (“[The] Guatemalan authorities denied registry of the Defendant’s vessel.  Thus, the vessel was stateless for purposes of [the MDLEA].”).  Subsection (C) is no longer relevant.

     The defendants’ argument that “nationality is separate and distinct from a claim of registry” is a *non sequitur*. (Docket No. 97 at p. 16.)   According to Martínez, García-Jiménez, and García-Encarnación, “some countries link nationality to registration, while others obviate the need for registration by extending nationality automatically to ships owned by its nationals.” Id. (citation and internal quotation omitted).  The registration requirements mandated by the Dominican Republic is of

no concern to this Court.  The relevant authority is the MDLEA,
not the maritime laws and customs of other countries.

The MDLEA refers to nationality and registration in the
disjunctive.  For instance, the MDLEA provides that a "claim of
**nationality or registry** for the vessel is made by the master or
individual in charge at the time of the enforcement action."  46
U.S.C. § 70502(b)(2)(B) (emphasis added).  Indeed, the "MDLEA
treats the terms 'nationality' and 'registry' as interchangeable
throughout § 70502."  United States v. Gruezo, 44 F.4th 1284, 1291
(11th Cir. 2023); see United States v. Escalona-Reid, Case No. 20-
203, 2022 U.S. Dist. LEXIS 222556, at *5 (D.P.R. Dec. 8, 2022)
(Carreño-Coll, J.) (noting that "the MDLEA uses registry and
nationality interchangeably").  Because nationality and registry
are synonymous, dismissal of the indictment is inappropriate on
this basis.

### B. **United States v. Dávila-Reyes is not Applicable**

The defendants seek refuge in inapplicable precedent.
They contend that Dávila-Reyes governs the disposition of this
case.  (Docket No. 81 at p. 2.)  The Court disagrees with this
proposition.

In Dávila-Reyes, the First Circuit Court of Appeals held
that the phrase "vessels without nationality" is coextensive with
the "international law definition of statelessness."  23 F.4th

at 172.   A defendant "claimed Costa Rican nationality for [his] vessel but did not provide any documentation to support that claim."   Id. at 158.   Costa Rica officials could neither confirm nor deny the vessel's registry.   Id. at 159.   Consequently, law enforcement officers determined that the vessel was "without nationality and subject to U.S. jurisdiction" pursuant to subsection (C).   Id.

On appeal, the defendants argued that "their vessel was not properly deemed stateless."   Id. at 170.   The Dávila-Reyes court agreed, holding that subsection (C) is inconsistent with international law.   Id. at 188.   Pursuant to the latter, a master's verbal declaration of registry establishes a presumption of nationality.   Id. at 188-89.   ("Rejecting a verbal claim of nationality based on the lack of substantiating evidence [*i.e.* confirmation of registry from Costa Rica] negates that distinct method for claiming nationality recognized both by the MDLEA and by international law.").

The First Circuit Court of Appeals withdrew the Dávila-Reyes decision on July 5, 2022, however, to conduct an *en banc* review of subsection (C).   United States v. Reyes-Valdivia, 38 F.4th 288 (1st Cir. 2022).   Accordingly, Dávila-Reyes is no longer binding on this Court.   See Escalona-Reid, 2022 U.S. Dist. LEXIS

222556, at *3 ("So although we write in the shadow of Dávila-Reyes, it has no weight here.").

Oral argument occurred ten months ago, on October 18, 2022.  Reyes-Valdivia, 38 F.4th 288.  A disposition has yet to issue, placing subsection (C) and defendants facing prosecution pursuant to this provision in purgatory.  In any event, the impending *en banc* decision cannot shield Martínez, García-Jiménez, and García-Encarnación from prosecution because the drug-trafficking allegations in this case are based on subsection A. The vessel's master's claim of Nationality was denied by the Dominican Republic.  (Docket No. 95, Ex 1 at P.3)

### C. The Defendants' Constitutional Challenge

Martínez, García-Jiménez, and García-Encarnación also raise two interrelated constitutional arguments.  (Docket No. 97.) First, they assert that the verification procedure set forth in 46 U.S.C. § 70502 ("section 70502") is impermissibly vague.  Id. at p. 7.  Second, the defendants purport that section 70502 emboldens "arbitrary enforcement by the USCG and others tasked with enforcing the law."  Id. at p. 8.  Both arguments are meritless.

A statute is void for vagueness in two circumstances. First, an excessively vague statute "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits."  Hill v. Colorado, 530 U.S. 703, 732 (2000).

Second, a statute is unconstitutional if "it authorizes or even encourages arbitrary and discriminatory enforcement."  Id.  Due process does not demand, however, that Congress account for every conceivable application of a law.  Any statute is "susceptible to clever hypotheticals testing its reach."  Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct., 894 F.3d 235, 251 (6th Cir. 2018); IMS Health Inc. v Ayotte, 550 F.3d 42, 61 (1st Cir. 2008) ("[S]tatutes do not need to be precise to the point of pedantry, and the fact that a statute requires some interpretation does not perforce render it unconstitutionally vague.").

        The defendants assert that the "MDLEA's amorphous" verification procedure provides insufficient notice to "people navigating the high seas."  (Docket No. 97 at p. 8.)  This procedure, however, is not ambiguous:  The master of the vessel makes a claim of registry; the USCG requests that officials from the purported flag state confirm or deny registration; these officials tender a response; the Secretary of State or his or her designee then memorializes this response in a certification. 46 U.S.C. § 70502(d); cf United States v. Gruezo, 66 F.4th 1284, 1292 (11th Cir. 2023) (holding that the "text of § 70502(d)(1)(B) is sufficiently clear to give ordinary people notice that, without a claim of nationality or registry for the vessel upon request, the vessel will be considered stateless for purposes of

jurisdiction under the MDLEA."). A person of ordinary intelligence
is fully capable of understanding this procedure.

The defendants cite Kolender v. Lawson, 461 U.S. 352
(1983), contending that the verification procedure fails to
"establish minimal guidelines to govern law enforcement." (Docket
No. 97 at p. 8) (citation and quotation omitted). In Kolender,
the Supreme Court determined whether a California law transgressed
the Due Process Clause. The relevant statute required "that an
individual provide 'credible and reliable' identification when
requested by a police officer who has reasonable suspicion of
criminal activity sufficient to justify a Terry detention." 461
U.S. at 355-56. The Kolender court invalidated this statute,
holding that it "contain[ed] no standard for determining what a
suspect has to do in order to satisfy the requirement to provide
a 'credible and reliable' identification." Id. at 358. Police
officers possessed "complete discretion . . . to determine whether
the suspect" complied with the statute. Id.

Unlike the police officers in Kolender, Coast Guardsmen
lack unbridled discretion to determine which vessels are subject
to prosecution in the United States. In this case, the Dominican
Republic denied the defendants' claim of registry. (Docket No. 95,
Ex. 1 at p. 3.) This response is final and dispositive, not
subject to arbitrary interpretation by the Secretary of State. In

contrast to the "credible and reliable" identification requirement in Kolender, the Dominican Republic's denial of registration is not open to interpretation.   Indeed, a district court in this jurisdiction recently denied an identical motion to dismiss an MDLEA case.   See Ceballo, 2022 U.S. Dist. LEXIS 198342, at *15 (denying the defendant's motion to dismiss, holding that Kolender is inapplicable because "[there] is no wiggle room about what response the government needs from the claimed flag state to exercise jurisdiction").   Consequently, the defendants' constitutional challenge is unconvincing.

     **D.**   **The Purported "Nexus" Requirement**

     Martínez, García-Jiménez, and García-Encarnación move to dismiss the indictment "in light of the government's inability to establish a nexus linking the defendants' alleged actions and the United States." (Docket No. 97 at p. 9.)   They also maintain that the MDLEA is "an invalid exercise of Congress' Article I powers, . . . [expanding United States] jurisdiction well beyond U.S. borders to include people and acts that have no connection to the United States."   Id. at p. 13.

     The defendants' nexus argument contravenes well-settled precedent.   According to the First Circuit Court of Appeals, the United States need not establish a jurisdictional nexus.   See United States v. Rodríguez, 507 F.3d 749, 761-62 (1st Cir. 2007)

("We have previously held that the MDLEA does not contain such a nexus requirement; the flag nation's consent to jurisdiction is sufficient") (citing <u>United States v. Bravo</u>, 489 F.3d 1, 7 (1st Cir. 2007) ("We do not read the MDLEA to require a jurisdictional nexus.")); <u>United States v. Nueci-Peña</u>, 711 F.3d 191, 197 (1st Cir. 2013) (holding that the "MDLEA does not require a nexus between a defendant's conduct and the United States").

This Court has held, consistent with the weight of authority, that the MDLEA is a constitutional exercise of congressional authority pursuant to the Pirates and Felonies Clause.  <u>See</u> <u>United States v. Díaz-Docel</u>, 990 F. Supp. 2d 163, 164 (D.P.R. 2014) (Besosa, J.) (citing <u>Nueci-Peña</u>, 711 F.3d at 198)).  Indeed, district courts within this jurisdiction routinely deny motions to dismiss MDLEA actions on this basis.[8]  Moreover, the

---

[8] <u>See also United States v. Salazar-Realpe</u>, Case No. 15-087, 2015 U.S. Dist. LEXIS 80016 *7 (D.P.R. June 18, 2015) (holding that the "MDLEA is constitutionally valid under the Define and Punish Clause") (Delgado-Hernández, J.); <u>United States v. Ramírez</u>, Case No. 19-117, 2019 U.S. Dist. LEXIS 189135 *4-5 (D.P.R. Oct. 28, 2019) (holding that the "MDLEA does not exceed Congress' power under the Define and Punish Clause") (Cerezo, J.); <u>United States v. Trapp</u>, Case No. 16-159, 2017 U.S. Dist. LEXIS 101569 *17 (D.P.R. May 11, 2017) (holding that the "Felonies Clause provided sufficient congressional authority to enact the MDLEA") (McGiverin, Mag. J.); <u>Singleton v. United States</u>, 789 F. Supp. 492 (D.P.R. 1991) ("[T]here is nothing offensive to the Constitution nor inconsistent with international law for the United States to assert jurisdiction over its own vessel in international waters to prohibit the activity prescribed by this statute, not for the United States to do the same over a vessel the flag country of which has ceded jurisdiction to the United States.") (Fusté, J.).

majority of federal appellate courts are in agreement that Congress

acted within the parameters of Article I in enacting the MDLEA.[9]

### E. The Defendants' Exclusive Economic Zone Argument

Martínez, García-Jiménez, and García-Encarnación

contend that this Court lacks jurisdiction because law enforcement

agents apprehended them within the Dominican Republic's exclusive

economic zone ("EEZ").  (Docket No. 97 at p. 20.)  Pursuant to

Article 55 of the United Nations Convention on the Law of the Sea

("UNCLOS"), the "exclusive economic zone is an area beyond and

adjacent to the territorial sea."[10]  This zone extends 200 nautical

miles from land.  Id.  The defendants maintain that the Dominican

Republic's EEZ "does not correspond to the 'high seas.'"  (Docket

No. 97 at p. 21.)  Because Article I cannot substantiate a criminal

---

[9] See United States v. Pérez-Oviedo, 281 F.3d 400, 403 (3rd Cir. 2002) (holding that MDLEA "expresses the necessary congressional intent to override international law to the extent that international law might require a nexus to the United States for the prosecution of the offenses defined in the [statute]") (quotation omitted); Suerte, 291 F.3d at 375 (holding that "international law does not require a nexus" when the flag state consents to the application of United States law); United States v. Rendón, 354 F.3d 1320, 1325 (11th Cir. 2003) (holding that "this circuit . . . has not embellished the MDLEA with a nexus requirement)" (citation omitted).  The Ninth Circuit Court of Appeals adopts a minority view, however, "requir[ing] a "nexus between the prohibited activity and the United States" pursuant to the Due Process Clause.  United States v. Perlaza, 439 F.3d 1149, 1168-69 (9th Cir. 2006) ("The fact that the Government received Colombia's consent to seize the members of the Gran Tauro, remove them to the United States, and prosecute them under United States law in federal court does not eliminate the nexus requirement.").

[10] Available at https://www.un.org/Depts/los/convention_agreements/convention_overview_convention.htm (last visited June 21, 2023).  The Court notes that the "United States has signed but not ratified the UNCLOS."  United States v. Aybar-Ulloa, 987 F.3d 1, 5 n.2 (1st Cir. 2021).

prosecution for acts committed within a foreign state's EEZ, the defendants argue, the MDLEA is unconstitutional as applied to them. Id.  This argument is unavailing.

The term "high seas" includes the Dominican Republic's EEZ.  See United States v. Matos-Luchi, 627 F.3d 1, 2 n.1 (1st Cir. 2010) (holding that the Dominican Republic's EEZ is "considered the 'high seas' for purposes of the Coast Guard's enforcement jurisdiction," affirming the defendant's MDLEA conviction); United States v. Beyle, 782 F.3d 159, 167 (4th Cir. 2015) (holding that a nation's EEZ is "merely part of the high seas"); United States v. Iona De Jesús, Case No. 22-20473, 2023 U.S. Dist. LEXIS 103411, at *7-8 (S.D. Fla. May 4, 2023) ("A vessel outside the recognized 12-mile limit of a nation's territorial seas is a 'vessel located within international waters' subject to the United States' jurisdiction under the MDLEA."); United States v. Berroa, Case No. 21-20359, 2022 U.S. Dist. LEXIS 72670, at *9 (S.D. Fla. Apr. 20, 2022) ("[A] nation's exclusive economic zone does not constitute territorial waters but rather remains part of the high seas.  Therefore, the Court finds the MDLEA constitutional as-applied in this case.").  The defendant's EEZ argument has no merit.

### F. The Defendants' Waiver Argument

The defendants invoke their plea agreements to challenge the indictment.  (Docket No. 97 at pp. 4-5.)  The stipulations of facts set forth in the plea agreements provide that the "government of the Dominican Republic could neither confirm nor deny the vessel's registration."  (Docket No. 65 at p. 12; Docket No. 67 at p. 12; Docket No. 69 at p. 12.)  The Dominican Republic subsequently denied registry, however, shifting the jurisdictional basis of this prosecution from subsection C to subsection A.  This modification has no bearing on the indictment, or on the posture of this litigation.  In fact, the MDLEA states explicitly that jurisdiction "is not an element of an offense" proscribed by that statute.  46 U.S.C. § 70504(a).  The material facts and sentencing guidelines remain the same, irrespective of the jurisdictional basis.  The defendants cite no authority providing for the dismissal of an indictment based on a defendant's plea agreement.  Accordingly, dismissal cannot rest on the defendants' plea agreements.

## IV.  Conclusion

For the reasons set forth above, the defendants' motion to dismiss the indictment is **DENIED**.  (Docket Nos. 81 and 97.)

Criminal No. 20-359 (FAB)                                                      20

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 17, 2023.

                                   s/ Francisco A. Besosa
                                   FRANCISCO A. BESOSA
                                   SENIOR UNITED STATES DISTRICT JUDGE